IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER JONES,

        Plaintiff,

    v.

SERVICE ELECTRIC CABLE TV, INC.,

        Defendant.

CIVIL ACTION
NO. 18-2236

**MEMORANDUM OPINION**

**Schmehl, J.**                                                                                          **June 4, 2019**

## I.     INTRODUCTION

Plaintiff, Christopher Jones brings this suit against his former employer, Service

Electric Cable TV, Inc., under the Americans with Disabilities Act of 1990, 42 U.S. C. §

12101 ("ADA"), *et seq*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §

951 *et seq*. Jones alleges that he is an individual with a disability for the purposes of the

ADA and PHRA, and that Defendant violated the ADA and PHRA by not granting him a

reasonable accommodation and by retaliating against him in connection with his alleged

disability. Before the Court is the Motion for Summary Judgment of Defendant,

Plaintiff's response in opposition to the motion, and Defendant's reply. For the following

reasons, Defendant's motion is granted.

## II.     LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material

fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. Proc.

56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of

some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

III.  **FACTUAL BACKGROUND**

Plaintiff was hired by Defendant as an Installer on April 11, 2005. Joint Stipulation of Uncontested Facts ("JSUF"), ¶ 3. On December 10, 2012, Jones transferred to the Underground Construction Department and was classified as a lineman. *Id.* ¶ 4. During his employment with Defendant, Jones was a member of a collective bargaining unit represented by Local Union 375 of the International Brotherhood of Electrical Workers. *Id.* ¶ 6. Defendant and the Union are parties to a collective bargaining agreement ("CBA"). *Id.* ¶ 7, Exh. C. In 2015, Defendant received information that Jones was

treating for prostate cancer. JSUF ¶ 9. In connection with this diagnosis Jones needed to be absent from work for a continuous period of time beginning on or about August of 2015. Jones Dep., p. 15, Daubert Dep., p. 79. While absent from work, Jones continued to receive payment of his wages from Defendant as required by the CBA. *Id.* After this absence, Jones presented a note from his doctor that he could return to work at full duty as of October 20, 2015. JSUF, Exh. F. A review of Jones' Employee Earnings Record shows that he received pay at his full rate for the first 60 days he was absent from work, then at 50% of his rate for the next 30 days he was absent, all in accordance with the CBA. JSUF, Exh. G.

Jones claims to have injured his back at work on January 12, 2016, but no workers' compensation claim was filed following this back injury. JSUF ¶¶ 12, 13. Jones was absent from work on January 13, 2016, January 14, 2016, January 15, 2016, and January 18, 2016, and submitted physician's notes for those days of absence. *Id.* ¶¶ 15-17. On January 15, 2016, Jones was advised by Mike Gehringer, his Underground Supervisor, that he would become a CSR as of January 18, 2016. Def's Brief, Exh. 4. On January 19, 2016, despite being told to report to the CSR department, Jones reported to the Pay TV Department. JSUF, ¶ 18. After meeting with his Union Steward, Jones was ordered to report to the CSR department, which he did, and began CSR training. *Id.* ¶¶ 18, 19.

On January 20, 2016, Jones called Phyllis Christine, Defendant's Office Manager, and informed her that he was unable to come to work for medical reasons, and on that same date, Defendant received a note from Jones' doctor stating that he was excused from work beginning on January 20, 2016, and could return on January 27, 2016. *Id.* ¶¶

24, 25. Jones was then discharged by a letter sent via email dated January 25, 2016. *Id.* ¶

26, Exh. I. That letter stated:

> As of 01/08/2016, you have been out of work for 90 working days since
> your anniversary of 04/11/2015. As per the Union contract Article VII,
> section 3 after the expiration of 90 working days of sick leave of absence
> if you are unable to continue to work in your regular classification your
> (sic) will have the option to work as a CSR at the then current CSR rate of
> pay and benefits or file for permanent disability. Reluctantly after being
> told you would not have employment if you declined the CSR position as
> per the contract you reported to [Phyllis Christine] on Tuesday, 1/19/2016
> for one (1) day. Since you have exhausted your sick leave we have
> terminated your employment as of today, January 25, 2016.

*Id.* ¶ 26, Exh. I.

Jones submitted medical notes for each of the non-vacation days for which Jones

was absent from 2015 through the date of his termination, and requested an

accommodation to permit him to take medical leave from January 20 through January 27,

2016. *Id.* ¶¶ 27, 28. Jones also requested an accommodation to be permitted to work in

the Pay Television Department on light duty, and in January of 2016, requested an

accommodation to work as a locator. *Id.* ¶¶ 30, 35. Defendant refused all of Jones'

accommodation requests, and did not engage in any dialogue with Jones regarding his

request for medical leave from January 20 to January 27, 2016, his request to work in the

Pay Television Department on light duty, or his request to work as a locator. *Id.* ¶¶ 29,

32, 33, 36.

## IV.    **DISCUSSION**

Plaintiff's Complaint contains causes of action under the Americans with

Disabilities Act ("ADA") and the Pennsylvania Human Relations Act. The purpose of the

ADA is to "prevent otherwise qualified individuals from being discriminated against in

employment based on disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 607 (3d Cir. 2006).

## A. DISCRIMINATION

In order to prevail on a claim for disability discrimination under the ADA or the PHRA[1], a plaintiff must prove: 1) he has a disability or is regarded as having a disability, 2) he is an otherwise qualified individual able to perform his essential job duties, and 3) he has suffered an adverse employment action because of that disability. *Turner*, 440 F.3d at 611. In the instant matter, Defendant argues only that Jones cannot establish the second element of his *prima facie* case, claiming that he is not a "qualified individual."

A "qualified individual" under the ADA is defined as one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).The burden is on a plaintiff to show that he is a "qualified individual." *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir. 2002). In order to determine whether someone is a qualified individual, the Third Circuit uses a two-part test. *Gaul v. Lucent Technololgies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). The first part of the test requires the plaintiff to show that he "satisfies the requisite skill, experience, education and other job-related requirements" of his position, while the second part addresses whether or not the plaintiff "with or without reasonable accommodation, can perform the essential functions of such position." *Id.*

In the instant matter, Defendant focuses its argument that Jones is not a qualified individual on the reasonableness of Plaintiff's requested accommodation. Defendant argues that Jones cannot establish a *prima facie* case of disability discrimination as he has

---

[1] The Third Circuit has recognized that the ADA and the PHRA are "basically the same" and Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002).

not shown that he is a qualified individual who is able to perform the essential functions of his position, with or without accommodation, at the time of his termination. After a thorough review of the terms of CBA in this matter, I agree with Defendant.

Defendant correctly states that the ADA "does not require that collectively bargained seniority rights be compromised in order to reasonably accommodate a disabled individual." *Kralik v. Durbin*, 130 F.3d 76, 82 (3d Cir. 1997), *quoting Eckles v. Conrail*, 94 F.3d 1041, 1046 (7th Cir. 1996). It is undisputed that Jones was bound by the CBA that was entered into between the Union and Defendant, and that the CBA contains clear language regarding an employee's use of sick leave. Specifically, it states:

> In the event of a non-work-related or non Workers' Compensation covered sick leave or sick leave of absence, bargaining unit members who are absent for a period of up to 60 working days (calculation will be based upon the employees anniversary date), will continue to receive full pay from the Company. For any sick leave of absence lasting in excess of a period of 60 working days as described above, the bargaining unit member's regular pay will be reduced by 50% until the bargaining unit member returns to work. A bargaining unit member shall have the opportunity to engage in light duty work and receive full pay at his or her regular and unreduced rate of pay should he or she elect this option. After the expiration of 90 working days of sick leave of absence, if a bargaining unit member is unable to continue to work in his or her regular classification, he or she will have the option to work as a CSR at the then current CSR rate of pay and benefits. If the affected bargaining unit member cannot or does not desire to return to work within these guidelines he or she has the right to file for permanent disability.

JSUF, Exh. C. After 90 days of sick leave of absence, it is clear that an employee must report back to their regular job, be transferred to a light duty CSR position, or resign their position and file for permanent disability. There are no other options pursuant to the CBA once an employee has exhausted 90 days of sick leave.

As calculated by Defendant, on January 8, 2016, Jones was absent for his 90th sick day in his anniversary year. Def's Brief in Support, Exh. 3. Jones' supervisor, Mike

Gehringer, documented the fact that he spoke to Jones on January 15, 2016, and informed him that as of January 18, 2016, he would be transferred to a CSR position. Def's Brief, Exh. 4. Further, after Jones' 90th sick absence, he continued to be absent on January 13, 14, 15, and 18, 2016. JSUF, ¶¶ 14-17. When Jones reported to work on January 19, 2016, after a conversation with his Union Steward, he reported to CSR department to begin his training, and that was the last day he reported to work at Defendant. JSUF ¶¶ 19, 23. The next day, January 20, 2016, Jones was absent from work and submitted multiple doctors' notes stating that he was excused from work through February 29, 2016. JSUF, Exh. F.

It is clear that by January 8, 2016, Jones had received all the sick leave to which he was entitled under the CBA. He then requested additional leave past the time that was provided for in the CBA. Allowing Jones to have additional leave past what was agreed upon in the CBA would have been a violation of the CBA, and therefore unreasonable. *See Davis v. Thomas Jefferson University*, 2015 WL 4130491 (E.D. Pa. July 9, 2015.) As Jones' requested accommodation was unreasonable, he cannot prove that he was a "qualified individual" under the ADA. At the time of his termination, he was unable to perform his essential job functions and refused the accommodation of a CSR position as contained in the CBA. Any further extension of his sick leave would have been a violation of the CBA and therefore unreasonable, as an accommodation to one employee which infringes on the rights of another employee is not reasonable. *Kralik*, 130 F.3d at 83.

In an attempt to circumvent this, Jones argues that there is a genuine issue of material fact as to whether Defendant properly calculated the ninety days of sick leave that he is entitled to, and whether Defendant applied the correct provision of the CBA in

determining the type of leave to which Jones was entitled. Specifically, Jones argues that the CBA differentiates between "sick leave" and "sick leave of absence," as a "sick leave of absence" under the CBA means an illness or disability that lasts longer than ten days. Jones further argues that during his anniversary year, he had a total of 53 days for "sick leaves of absence," not 90 days, if you only count periods of time exceeding 10 days.

Similarly, Jones argues that he suffered a back injury at work on January 12, 2016, and that pursuant to the CBA, there is no 90 day limitation on sick leave when an employee is out of work due to a workplace injury. Jones claims that he informed his supervisor of his back injury on January 12, 2016, but that he was provided no forms, and no forms were completed for workers compensation. According to Jones, if his absences after January 12, 2016, had been properly processed as a workplace injury, he would have received unlimited leave under the CBA and would not have been forced to work as a CSR or be terminated.

Despite his arguments that his sick leave was not properly calculated, Jones failed to file a grievance under the CBA. A review of the CBA shows that Section XI clearly provides for an extensive grievance and arbitration procedure that results in binding arbitration. JSUF, Exh. C. In failing to file a grievance as to whether he was provided with the correct number of sick days, or what provision of the CBA his absences should have fallen under, Jones has failed to exhaust the grievance procedures contained in the CBA. Jones' arguments require in depth analysis and interpretation of the CBA, which is not for this Court to undertake. "In issues involving CBA interpretation, courts are not permitted to 'weigh[ ] the merits of [a] grievance' because 'whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.'" *Keck v. PPL*

*Electric Utilities Corp.*, 99 Fed. Appx. 357, 360 (3d Cir. May 5, 2004), *citing United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). The Supreme Court has held that "federal labor policy requires that individual employees wishing to assert contract grievance must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965).

In the instant matter, Jones' assertions of ADA violations require "classic CBA interpretation," and should have been arbitrated as per the CBA. *Keck*, 99 F. App'x. at 361. Accordingly, Jones' attempt to have this Court undergo an extensive analysis of the CBA to determine whether it was applied appropriately is improper. *See Keck*, 99 F. App'x at 358, *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990), *Palumbo v. United Parcel Serv. of Am., Inc.*, 2007 WL 2900403 (D.N.J. Oct. 2, 2007).

Therefore, as an extension of sick leave past what was agreed to in the CBA would have been unreasonable, Jones is not a qualified individual under the ADA and has failed to establish a *prima facie* case of disability discrimination.[2] Accordingly, Jones' discrimination claim must be dismissed.

**B. RETALIATION**

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (quotations omitted).

---

[2] I note that Jones did not rebut Defendant's argument that an extension of sick leave past what was agreed to in the CBA would have been a violation of the CBA and therefore unreasonable.

In the instant matter, Defendant argues that Jones cannot meet the third prong of the *prima facie* case, as he will be unable to demonstrate a causal connection between his protected activity and Defendant's decision to terminate him. In order to demonstrate a causal connection, a plaintiff may show 1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or 2) a pattern of antagonism coupled with timing. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 271, 280 (3d Cir. 2007).

Jones alleges that he was retaliated against because of his requested leave in 2015, and that he was retaliated against because of his requested medical leave in January of 2016. Complaint, ¶ 67. As for the 2015 leave, this alleged protected activity is too temporally remote to support an inference of discriminatory animus. Multiple months separating the protected activity from the adverse employment action is not unusually suggestive of a retaliatory motive. *See Williams v. Phila. Housing Authority Police Dept*., 380 F.3d 751, 759-60 (3d Cir. 2004) (two month lapse between request for accommodation and discharge was not, on its own, unusually suggestive for retaliatory motive).

Here, Plaintiff's first request for leave occurred in August of 2015, nearly six months before Plaintiff's termination. This is too long a period of time to support an inference of discriminatory animus, and Jones' allegation that he was retaliated against due to his request for leave in the summer of 2015 must fail. However, Jones' allegation that he was terminated as retaliation for his request for medical leave in January of 2016 is a much closer call, as mere days separate the protected activity from Jones' termination. Therefore, I find Plaintiff can establish a *prima facie* case as to his January

of 2016 request for leave, and the burden in this matter shifts to Defendant to articulate a legitimate, nonretaliatory reason for the adverse action. *Larkin v. Methacton Sch. Dist.* 773 F.Supp.2d 508, 529-30 (E.D. Pa., 2011). This burden is relatively light and can be satisfied if defendant articulates any legitimate reason for the adverse action. *Id.* Defendant claims that it terminated Jones after he failed to come to work after exhausting all time provided to him under the CBA. This is sufficient to satisfy Defendant's burden of production in this matter.

Accordingly, the burden shifts back to Jones to establish that Defendant's proffered explanation is false, and that retaliation was the real reason for the adverse action. *Larkin,* 773 F.Supp.2d at 508. To do so, Jones must present evidence from which a factfinder could disbelieve Defendant's articulated reasons for his termination, or more importantly believe that discrimination was more likely the cause of Defendant's actions. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To discredit the employer's articulated reason, the plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, *Sempier,* 45 F.3d at 732, nor produce additional evidence beyond his *prima facie* case, *Fuentes,* 32 F.3d at 764. The plaintiff must, however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them `unworthy of credence'" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. *Id.*at 764-65 (*quoting Ezold,* 983 F.2d at 531). For example, the plaintiff may show that the employer has previously discriminated against him, that the employer has discriminated against other persons within the plaintiff's protected class or

within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class. *Fuentes,* 32 F.3d at 765.

First, Jones attempts to discredit Defendant's articulated reason for his firing by arguing that Defendant improperly calculated Jones' sick leave under the CBA, improperly failed to classify his work injury under the CBA in order to terminate him, and had "shifting" reasons for its decision to terminate him. Jones makes much of the fact that his termination letter said he was terminated because he exhausted sick leave, and Jack Capparell, the decision maker in Plaintiff's termination, testified that Jones was fired because he "walked off the job." Plaintiff argues that the record reflects "differing reasons for termination, together with a patent misreading and contortion of the CBA and acknowledged aggravation toward Plaintiff's disability and accommodation needs." Pl's Brief, p. 25, n. 99.

However, Mr. Capparell's deposition testimony clearly showed that he believed Jones had exhausted his 90 days of sick leave under the CBA. Capparell Dep., p. 106. Further, Jones himself testified that his union representative clearly and directly told him that Defendant's position was that he had exceeded his 90 days of sick time. Jones Dep., p. 37. This, and any other misinterpretation of the CBA is insufficient evidence to establish pretext in this matter. The CBA clearly permits only 90 days of sick leave. Jones clearly had used more than 90 days of sick leave, failed to follow the CBA, and failed to file a grievance under the CBA if he thought his leave was being miscategorized or the company's actions were in violation of the CBA.

As for proving pretext by showing that discrimination was more likely than not the cause of his termination as set forth in *Fuentes,* courts look at whether the employer

previously discriminated against the plaintiff, whether the employer has discriminated against other people within protected classes, and whether the employer has treated other similarly situated people who are not in a protected class more favorably.  In the instant matter, Jones has not alleged any previous discrimination against him or any others by Defendant. Accordingly, he must prove preferential treatment given by Defendant to other employees in order to prove that discrimination was more likely than not the cause of his termination. This he cannot do. Jones mentions locator jobs and Pay TV jobs within the company, but presents no evidence that these jobs were given to other employees under the same circumstances (90 days or more of sick time used) and same CBA under which he was operating. Jones has presented no evidence whatsoever that any employee under the current CBA has been treated better or differently than he has. Accordingly, he has failed to establish pretext, and Defendant is entitled to summary judgment on Jones' retaliation claim.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and this case is dismissed. An appropriate order follows.